**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MID-ATLANTIC EQUITY CONSORTIUM, *et al.*, <br><br>                          *Plaintiffs*, <br> v. <br><br> U.S. DEPARTMENT OF EDUCATION, *et al.*, <br><br>                          *Defendants*. | Case No. 1:25-cv-1407-PLF |

## <u>REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.   This Court Has Jurisdiction Over Plaintiffs' Claims .......................................................... 2

        A.   The Tucker Act Does Not Preclude Jurisdiction in the District Court ...................... 2

        B.   Plaintiffs' Claims Are Ripe ....................................................................................... 6

    II.   Plaintiffs Are Likely to Succeed on the Merits of Their Claims .................................... 9

        A.   Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims ....................... 9

        B.   Plaintiffs Are Likely to Succeed on the Merits of Their First Amendment Claims .. 12

        C.   Plaintiffs Are Likely to Succeed on the Merits of Their Fifth Amendment Claims . 14

    III.   Plaintiffs Have Demonstrated Irreparable Harm ...................................................... 17

    IV.   The Balance of Equities Favors Plaintiffs .................................................................. 22

    V.   The Court Should Not Require Plaintiffs to Post Security .......................................... 23

    VI.   The Court Should Order Defendants to Extend the Term of the EAC Continuation Grants to Make Plaintiffs Whole ......................................................... 24

CONCLUSION ....................................................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.A.R.P. v. Trump*,
  145 S. Ct. 1364 (2025)................................................................................22

*A.B.A v. U.S. Dep't of Educ.*,
  370 F. Supp. 3d 1 (D.D.C. 2019)................................................................8

*A.B.A. v. U.S. Dep't of Just.*,
  No. 25-CV-1263 (CRC), 2025 WL 1388891 (D.D.C. May 14, 2025)....................3

*\*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  570 U.S. 205 (2013)................................................................................13, 20

*Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*,
  No. CV 25-00400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025)....................3

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
  457 U.S. 853 (1982) (plurality opinion) ................................................13

*Bellion Spirits, LLC v. United States*,
  7 F.4th 1201 (D.C. Cir. 2021)....................................................................6

*Bellsouth Corp. v. FCC*,
  17 F.3d 1487 (D.C. Cir. 1994)....................................................................8

*Bennett v. Spear*,
  520 U.S. 154 (1997)................................................................................6, 7

*Beverly Enters., Inc. v. Herman*,
  50 F. Supp. 2d 7 (D.D.C. 1999)................................................................8

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988)................................................................................4

*California v. U.S. Dep't of Educ.*,
  132 F.4th 92 (1st Cir. 2025)....................................................................3

*Clifton Power Corp. v. FERC*,
  294 F.3d 108 (D.C. Cir. 2002)....................................................................8

*Climate United Fund v. Citibank, N.A.*,
  No. 25-CV-698-TSC, 2025 WL 1131412 (D.D.C. Apr. 16, 2025) ....................4

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
  137 F.4th 932 (9th Cir. 2025) ...........................................................4, 6

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
  38 F.4th 1099 (D.C. Cir. 2022) ...........................................................6

*Department of Education v. California*,
  145 S. Ct. 966 (2025) ...........................................................2, 3

*DSE, Inc. v. United States*,
  169 F.3d 21 (D.C. Cir. 1999) ...........................................................23

*Encino Motorcars, LLC v. Navarro*,
  579 U.S. 211 (2016) ...........................................................10

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*,
  502 F. Supp. 3d 492 (D.D.C. 2020) ...........................................................23

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ...........................................................15, 16, 17

*FCC v. League of Women Voters of Cal.*,
  468 U.S. 364 (1984) ...........................................................13

*Fontem US, LLC v. U.S. FDA*,
  82 F.4th 1207 (D.C. Cir. 2023) ...........................................................8

*Gordon v. Holder*,
  632 F.3d 722 (D.C. Cir. 2011) ...........................................................21

*Gordon v. Holder*,
  721 F.3d 638 (D.C. Cir. 2013) ...........................................................23

*Holland v. Florida*,
  560 U.S. 631 (2010) ...........................................................25

*Huisha-Huisha v. Mayorkas*,
  27 F.4th 718 (D.C. Cir. 2022) ...........................................................22

*Int'l Telecard Ass'n v. FCC*,
  166 F.3d 387 (D.C. Cir. 1999) ...........................................................8

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) ...........................................................13

*Le Blanc v. United States*,
  50 F.3d 1025 (Fed. Cir. 1995) ...........................................................5

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
  No. 25-cv-0946 (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025).....................................24

*League of Women Voters of United States v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ........................................................................................23

*Loc. 8027 v. Edelblut*,
  No. 21-CV-1077-PB, 2024 WL 2722254 (D.N.H. May 28, 2024), *appeal filed*
  No. 24-1690 (1st Cir. July 26, 2024) .........................................................................16

*Loper Bright Enters. v. Raimondo*,
  603 U.S. 369 (2024).....................................................................................................12

*Marcum v. Salazar*,
  694 F.3d 123 (D.C. Cir. 2012) ......................................................................................8

*Mathews v. Eldridge*,
  424 U.S. 319 (1976).....................................................................................................15

*Md. Dep't of Hum. Res. v. Dep't. of Health & Hum. Servs.*,
  763 F.2d 1441 (D.C. Cir. 1985) .....................................................................................3

*Mills v. District of Columbia*,
  571 F.3d 1304 (D.C. Cir. 2009) ...................................................................................18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983).......................................................................................................10

*Murphy v. United States*,
  993 F.2d 871 (Fed. Cir. 1993)........................................................................................4

*NAACP v. Button*,
  371 U.S. 415 (1963).....................................................................................................21

*NAACP v. U.S. Dep't of Educ.*,
  No. 25-CV-1120 (DLF), 2025 WL 1196212 (D.D.C. Apr. 24, 2025)........................16, 17, 23

*Nat. Res. Def. Council, Inc. v. Morton*,
  337 F. Supp. 167 (D.D.C. 1971) ..................................................................................23

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
  767 F. Supp. 3d 243 (D. Md. 2025), *opinion clarified*, No. 25-CV-0333-ABA,
  2025 WL 750690 (D. Md. Mar. 10, 2025)...............................................................16, 23

*Nat'l Council of Nonprofits v. OMB*,
  No. 25-cv-239 (LLA), 2025 WL 597959 (D.D.C. Feb. 25, 2025), *appeal filed*
  No. 25-5148 (D.C. Cir. Apr. 25, 2025).........................................................................23

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,
   No. 25-CV-091 (LM), 2025 WL 1188160 (D.N.H. Apr. 24, 2025) ........................................16

*Nken v. Holder*,
   556 U.S. 418 (2009) .........................................................................................................................2

*O'Sullivan v. U.S. Dep't of Health & Hum. Servs.*,
   No. 22-CV-1189 (CRC), 2024 WL 1071045 (D.D.C. Mar. 12, 2024) ....................................8

*Open Top Sightseeing USA v. Mr. Sightseeing, LLC*,
   48 F. Supp. 3d 87 (D.D.C. 2014) .................................................................................................22

*Porter v. Warner Holding Co.*,
   328 U.S. 395 (1946) .......................................................................................................................24

*Ransom v. United States*,
   900 F.2d 242 (Fed. Cir. 1990) .......................................................................................................5

*RELX, Inc. v. Baran*,
   397 F. Supp. 3d 41 (D.D.C. 2019) ...............................................................................................8

*Rosenberger v. Rectors & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) .......................................................................................................................12

*Rust v. Sullivan*,
   500 U.S. 173 (1991) .......................................................................................................................13

*\*S. Educ. Found. v. U.S. Dep't of Educ.*,
   No. 25-cv-1079, 2025 WL 1453047 (D.D.C. May 21, 2025)........................................ *passim*

*S. Educ. Found. v. U.S. Dep't of Educ.*,
   No. 25-CV-1079-PLF, ECF No. 18 (D.D.C. May 5, 2025)......................................................2

*S.F. A.I.D.S. Found. v. Trump*,
   No. 25-CV-01824-JST, 2025 WL 1621636 (N.D. Cal. June 9, 2025) .............................13, 17

*\*Sackett v. E.P.A.*,
   566 U.S. 120 (2012)........................................................................................................................7

*Sessions v. Dimaya*,
   584 U.S. 148 (2018)..................................................................................................................15, 16

*Tenn. Educ. Ass'n v. Reynolds*,
   732 F. Supp. 3d 783 (M.D. Tenn. 2024).................................................................................15, 16

*United States v. Alford*,
   89 F.4th 943 (D.C. Cir. 2024) ....................................................................................................10

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993)......................................................................................................14

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976)....................................................................................................14

*Vanda Pharms. Inc v. FDA*,
  No. 23-CV-2812 (CRC), 2024 WL 4133623 (D.D.C. Sept 10, 2024) .......................9

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982)....................................................................................................16

*Warth v. Seldin*,
  422 U.S. 490 (1975)....................................................................................................21

*Widakuswara v. Lake*,
  No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) .........................................5

*\*Widakuswara v. Lake*,
  No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) (en banc) .......................5

**Statutes**

5 U.S.C. § 553(b) .........................................................................................................10

5 U.S.C. § 553(c) .........................................................................................................10

5 U.S.C. § 702...............................................................................................................4

16 U.S.C. § 825*l*...........................................................................................................8

20 U.S.C. 1234 *et seq*.................................................................................................14

20 U.S.C. § 1232(a)(1).................................................................................................12

20 U.S.C. § 1232(d) ......................................................................................7, 10, 12, 14

20 U.S.C. § 1234c(a).....................................................................................................10

20 U.S.C. § 1234d.........................................................................................................11

20 U.S.C. § 1234d(c).......................................................................................................7

20 U.S.C. § 1234d(f).......................................................................................................7

42 U.S.C. § 2000c–2.......................................................................................................1

42 U.S.C. § 2000d–1.........................................................................................10, 11, 14

**Other Authorities**

2 C.F.R. § 200.208(d) ...............................................................................................11

2 C.F.R. § 200.308(f)(10) .........................................................................................25

2 C.F.R. §§ 200.308(g)(2) .........................................................................................25

2 C.F.R. § 200.309 ....................................................................................................25

2 C.F.R. § 200.339(c) ...............................................................................................11

2 C.F.R. § 200.341(a) ...............................................................................................11

21 C.F.R. § 10.25(a) ...................................................................................................9

21 C.F.R. § 10.30 ........................................................................................................9

34 C.F.R. pt. 75 ...........................................................................................................3

34 C.F.R. pt. 100, App. A, pt. 1(18) ........................................................................11

34 C.F.R. § 75.105(b) ...............................................................................................10

34 C.F.R. § 75.105(b)(2) ..........................................................................................10

34 C.F.R. § 75.251(a) ...............................................................................................25

34 C.F.R. § 81.1 *et seq.* ...........................................................................................14

34 C.F.R. § 100.7 ......................................................................................................11

34 C.F.R. § 100.8 ......................................................................................................14

34 C.F.R. § 100.8(a) .................................................................................................11

34 C.F.R. § 270.6(a) .................................................................................................11

45 C.F.R. § 50.6 ..........................................................................................................8

Oxford English Dictionary,
   https://www.oed.com/search/dictionary/?scope=Entries&q=withhold (last
   visited May 21, 2025) ...........................................................................................11

## INTRODUCTION

For over sixty years, Congress has appropriated funds to the Equity Assistance Centers ("EACs") to provide technical assistance to help remedy discrimination pursuant to Title IV of the Civil Rights Act of 1964. 42 U.S.C. § 2000c–2. This February, the Department of Education (the "Department" or "ED") abruptly and unilaterally terminated all four EAC grants—eliminating the EAC program in its entirety. This Court has already found that the termination of one of the EAC grants was likely arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). *S. Educ. Found. v. U.S. Dep't of Educ.*, No. 25-cv-1079, 2025 WL 1453047, at *16–17 (D.D.C. May 21, 2025) ("*SEF*"). This case presents nearly the same issue. And so, Plaintiffs respectfully ask the Court to again reject the Defendants' protestations that it lacks jurisdiction and order the Department to reinstate the EAC grants to the Plaintiff Mid-Atlantic Equity Consortium, Inc. ("MAEC") and other EAC grantees who provide necessary services to the members of Plaintiffs the NAACP, the NAACP Tennessee State Conference, and the Somerville-Fayette NAACP (collectively, the "NAACP Plaintiffs").

In their opposition, Defendants do not address or even acknowledge the Court's opinion in *SEF*. They do not argue that the Court should reach a different result here. And the Court should not. MAEC is likely to succeed on its claims that the termination of its EAC grant is unconstitutional and violates the APA. MAEC has been, and will continue to be, irreparably harmed by the grant termination. On top of the *per se* irreparable harm MAEC experiences from the infringement of its Constitutional rights, MAEC has been forced to shut down its entire EAC program, lost almost half its funding, laid off four staff members, suffered irremediable reputational harm, and may not be able to sustain itself financially for long. MAEC is therefore entitled to a preliminary injunction.

Defendants likewise fail to address the claims of the NAACP Plaintiffs. NAACP members

across the country have been, and will continue to be, irreparably harmed by the loss of critical assistance and services that mitigate the harms of discrimination. NAACP Plaintiffs' claims are squarely within this Court's jurisdiction, and like MAEC, they are likely to succeed on the merits.

Accordingly, Plaintiffs respectfully request that the Court enjoin Defendants' termination of the EAC grant program and order the relief requested in Plaintiffs' Proposed Order.

## **ARGUMENT**

### I.    **This Court Has Jurisdiction Over Plaintiffs' Claims**

#### A.    The Tucker Act Does Not Preclude Jurisdiction in the District Court

This District Court has jurisdiction over Plaintiffs' claims challenging the termination of the EAC program and MAEC's individual EAC grant. This Court held as much in a suit alleging materially identical APA, First Amendment, and Fifth Amendment claims. *See SEF*, 2025 WL 1453047, at *9. Defendants' opposition merely retreads the arguments rejected in *SEF*. *Compare* Defs.' Opp., *S. Educ. Found. v. U.S. Dep't of Educ.*, No. 25-CV-1079-PLF, ECF No. 18 (D.D.C. May 5, 2025), at 6–9, *with* Defs.' Opp. to Pls.' Mot. for Prelim. Inj., ECF No. 26 ("Defs.' Opp."), at 6–10. Defendants fail to provide any reason to alter the conclusion the Court reached in *SEF* as to jurisdiction. Defendants also ignore relevant developments in the case law and that the NAACP Plaintiffs' claims further establish that this case belongs in the District Court.

##### 1.    *Neither* California *nor Related Case Law Require that This Suit Be Brought in the Federal Court of Claims.*

Defendants argue that the Supreme Court's stay order in *Department of Education v. California*, 145 S. Ct. 966 (2025) mandates jurisdiction in the Federal Court of Claims. Defs.' Opp. 8. But as with all stays, the *California* stay was "dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009). The circumstances of this case differ materially from those in *California* and establish that jurisdiction for both MAEC and the NAACP Plaintiffs'

claims properly lies in the District Court.

Unlike in *California*, the source of the rights that Plaintiffs invoke are not the terms of the EAC grant awards, but rather the relevant Constitutional provisions, regulations, and statutes, including GEPA, Title VI, and the Department's General Administrative Regulations, 34 C.F.R. pt. 75. Compl., ECF No. 1, at 42–55. This differs from *California* in two material ways. First, as this Court explained in *SEF*, the plaintiffs in *California* brought only APA claims, not Constitutional claims or claims based on other statutory violations. 2025 WL 1453047, at *8; *accord A.B.A. v. U.S. Dep't of Just.*, No. 25-CV-1263 (CRC), 2025 WL 1388891, at *5 (D.D.C. May 14, 2025) (holding that a district court had jurisdiction over grant cancellation claims where the source of rights was the First Amendment). As in *SEF*, the resolution of Plaintiffs' claims relies on determining if Defendants complied with the relevant statutes, regulations, and the Constitution, not on interpreting the terms of the EAC grant awards. *See Md. Dep't of Hum. Res. v. Dep't. of Health & Hum. Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985) (where claims "turn on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties . . . [they] are not contract claims"); *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 752378, at *9 (D.D.C. Mar. 10, 2025) (claims do not "sound in breach of contract when they do not at all depend on whether the terms of particular awards were breached"). This represents a second material difference from *California*, where the terms and conditions of each grant were at issue. *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96–97 (1st Cir. 2025) ("Here, although *the terms and conditions* of *each individual grant award are at issue* . . ." (emphasis added)).

Nor do Plaintiffs seek a contractual remedy. Unlike the TRO in *California*, 145 S. Ct. at 968, Plaintiffs do not seek payment of past-due obligations or any other form of compensatory

relief for breach of contract. Instead, Plaintiffs seek vacatur of the unlawful termination of the EAC program, including the unlawful termination of MAEC's grant. Moreover, Plaintiffs seek injunctive relief, not the contractual remedy of specific performance. *See Climate United Fund v. Citibank, N.A.*, No. 25-CV-698-TSC, 2025 WL 1131412, at *10 (D.D.C. Apr. 16, 2025) (contrasting the equitable relief plaintiffs sought granting access to unlawfully terminated grant funds with specific performance). The injunction sought here would not permanently bind the Department to its contractual obligations; rather, it would require only that the Department adhere to statutory, regulatory, and constitutional requirements before it seeks to dissolve the EAC program. *See* Compl. 56. As this Court explained, vacating an unlawful grant termination constitutes "precisely the relief that is afforded—indeed, required—by and routinely granted under the APA." *SEF*, 2025 WL 1453047, at *7 (quoting *Aids Vaccine Advoc. Coal.*, 2025 WL 752378, at *8)*. Plaintiffs can seek this injunctive relief only in the District Court because the Federal Court of Claims "has no power to grant equitable relief," *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988), and has "no authority to invoke the APA," *Murphy v. United States*, 993 F.2d 871, 874 (Fed. Cir. 1993).

In arguing that this suit must be brought in the Federal Court of Claims, Defendants ask this Court to ignore the APA's guarantee that individuals injured by agency action are "entitled to judicial review thereof." 5 U.S.C. § 702. Their argument "would mean that no court has jurisdiction to hear plaintiffs' claims . . . [a] result contrary to common sense . . . [that] also conflicts with the 'strong presumption favoring judicial review of administrative action' that is embodied in the APA." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 939 (9th Cir. 2025) (quoting *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015)).

   2. *The En Banc Opinion in* <u>Widakuswara v. Lake</u> *Further Supports a Finding that This Suit Belongs in the District Court.*

Defendants cite *Widakuswara v. Lake* ("*Widakuswara I*"), No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) for the proposition that APA challenges to grant terminations belong exclusively in the Court of Claims. Defs.' Opp. 8. But the D.C. Circuit, sitting en banc, vacated the *Widakuswara I* panel opinion as it related to the plaintiffs' challenge to the termination of their grants and denied the government's request to stay the injunction setting aside those terminations. *Widakuswara v. Lake* ("*Widakuswara II*"), No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (en banc). *Widakuswara II* rejected the panel majority's reasoning, noting that, "substantially for the reasons explained by [the dissent below], the government ha[d] not made the requisite strong showing of a likelihood of success on the merits" on the issue of jurisdiction. *Id.* (citations omitted). Central among the dissent's reasons in *Widakuswara I* were: (1) the plaintiffs' claims invoked the APA and governing statutes, not the terms of the grants; (2) the Court of Claims would not have jurisdiction over the plaintiffs' claims; and (3) the plaintiffs sought injunctive and declaratory relief rather than damages. 2025 WL 1288817, at *11–13 (Pillard, J., dissenting); *see also Le Blanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (concluding that the Court of Claims does not have jurisdiction over Constitutional claims). All these factors are present here and likewise support a finding that this Court has jurisdiction over Plaintiffs' claims.

   3. *The NAACP Plaintiffs' Claims Cannot Be Construed as Contractual for Purposes of the Tucker Act.*

NAACP Plaintiffs are beneficiaries of the EAC program's services, not recipients of grant funding, and do not themselves have a contractual relationship with Defendants. "To maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government." *Ransom v. United States*, 900 F.2d 242, 244 (Fed. Cir. 1990). NAACP Plaintiffs' claims therefore cannot be construed as contractual, and they do not have the

right to sue under the Tucker Act. *See Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1108 (D.C. Cir. 2022) (finding no Tucker Act jurisdiction over APA claims where the defendant was not a party to any contract with the plaintiff and did not owe any duty to the plaintiff pursuant to a contract); *Cmty. Legal Servs.*, 137 F.4th at 938 (where plaintiffs "do not even have the right to sue under the Tucker Act . . . the Court of Federal Claims has no jurisdiction to hear their suit"). Defendants do not refute that NAACP Plaintiffs' claims provide an additional reason for distinguishing this case from *California*, and they provide no basis to conclude that NAACP Plaintiffs' claims belong in the Federal Court of Claims. Nor could they. NAACP Plaintiffs do not seek contractual relief, but rather vindication of their rights under the APA, GEPA, Title VI, related regulations, and the Constitution. *See Cmty. Legal Servs.*, 137 F.4th at 937 (APA claims of legal services providers who were not parties to contract with defendant were not contractually based claims for the purposes of the Tucker Act). These claims belong in District Court.

B. Plaintiffs' Claims Are Ripe

Plaintiffs challenge final agency actions, and their claims are therefore ripe. *See Bellion Spirits, LLC v. United States*, 7 F.4th 1201, 1208 (D.C. Cir. 2021) (final agency action "is a prerequisite to ripeness in an APA case"). Defendants argue that Plaintiffs' challenge to the termination of the EAC program is unripe because MAEC submitted an administrative "objection" to its grant termination. Defs.' Opp. 10–11; *see also id.* at 14–15.[1]

Defendants are wrong. The termination of the EAC grants is final agency action under both prongs of the test set forth in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997): (1) it represented the culmination of the Department's decision to terminate the EAC grants and was effective

---

[1] Notably, Defendants do not contest that the other actions Plaintiffs challenge—the unlawful promulgation of the grant termination appeal procedures and the new agency priorities—are final agency action.

6

immediately without prior notice of deficiencies or an opportunity to respond, and (2) it had immediate legal consequences by freezing grantees' access to the obligated grant funds and requiring them to stop their grant-funded activities. *See SEF*, 2025 WL 1453047, at *15 (applying *Bennett* to the termination of the Southern Education Foundation's EAC grant).

The administrative objection that MAEC submitted in March does not change the analysis. MAEC submitted its objection pursuant not to any formal administrative process, but rather pursuant to the Department's unlawfully promulgated "grant termination appeal procedures." *See* Shaffer Decl. App. 1, at 16, ECF No. 15-3; *see also* Pls.' Mem. in support of their Mot. for Prelim. Inj., ECF No. 15-1 ("Opening Br."), at 27–28. The Department did not promulgate these procedures through notice-and-comment rulemaking or publish them in the Federal Register, as it is required to do. 20 U.S.C. § 1232(d). These procedures provide no indication as to what information the Department might consider in reviewing the objection, how the Department will assess the objection, who at the Department will assess the objection, or the timeframe in which the Department will consider the objection. These unlawfully promulgated procedures cannot supplant the pre-existing procedures for challenging mid-budget period grant terminations, which include an opportunity to be heard and a chance to appeal an adverse decision to the Secretary of Education. 20 U.S.C. § 1234d(c), (f). MAEC therefore did not submit its administrative objection pursuant to any lawful, formal agency procedure.

At most, the Department's newly promulgated appeal procedures are an "informal" invitation to discuss the grant termination, which cannot render agency action non-final. "The mere possibility that an agency might reconsider in light of 'informal discussion' and invited contentions of inaccuracy does not suffice to make an otherwise final agency action nonfinal." *Sackett v. E.P.A.*, 566 U.S. 120, 127 (2012). For example, an administrative "appeal" of agency action submitted

pursuant to an agency's "informal and unstructured process" does not render agency action non-final. *Fontem US, LLC v. U.S. FDA*, 82 F.4th 1207, 1214 (D.C. Cir. 2023). Similarly, an agency's re-opening of an administrative petition does not render denial of petition non-final where "there is no indication as to what new information the agency can review" and where, as here, the agency did not follow its own re-opening procedures. *RELX, Inc. v. Baran*, 397 F. Supp. 3d 41, 50–51 (D.D.C. 2019); *see also A.B.A v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 20–21 (D.D.C. 2019) (holding agency's informal invitation to student loan borrower to submit additional information did not render agency action non-final).

The unlawful nature of the newly promulgated appeal procedures—and the corresponding informal nature of MAEC's administrative objection—render the cases Defendants cite inapposite. *See* Defs.' Opp. 10–11, 14–15. In those cases, plaintiffs submitted administrative appeals pursuant to an established, lawful process. *See, e.g.*, *Marcum v. Salazar*, 694 F.3d 123, 126, 129 (D.C. Cir. 2012) (federal lawsuit unripe where plaintiffs requested agency reconsideration pursuant to formal administrative process, which was published in the Federal Register and afforded applicants a hearing on the record and a timeframe for decision); *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999) (judicial review was incurably premature where petitioner requested reconsideration pursuant to federal statute (citing 47 U.S.C. § 155(c)(4)–(7))); *Bellsouth Corp. v. FCC*, 17 F.3d 1487, 1489 (D.C. Cir. 1994) (same); *Clifton Power Corp. v. FERC*, 294 F.3d 108, 110–11 (D.C. Cir. 2002) (judicial review premature where petitioner made second request for rehearing through a formal administrative review process established by 16 U.S.C. § 825*l*); *O'Sullivan v. U.S. Dep't of Health & Hum. Servs.*, No. 22-CV-1189 (CRC), 2024 WL 1071045, at *3–4 (D.D.C. Mar. 12, 2024) (second application for administrative waiver submitted pursuant to 45 C.F.R. § 50.6 rendered pending judicial review incurably premature); *Beverly Enters., Inc. v.*

*Herman*, 50 F. Supp. 2d 7, 11–12 (D.D.C. 1999) (no final agency action where plaintiff formally appealed agency determination to an Administrative Law Judge). The same difference likewise distinguishes this case from *Vanda Pharms. Inc v. FDA*, No. 23-CV-2812 (CRC), 2024 WL 4133623 (D.D.C. Sept 10, 2024), cited by this Court in *SEF*, where the court found the petitioners' claim to be unripe due to a pending administrative petition through a formal review process properly established by 21 C.F.R. §§ 10.25(a), 10.30. *Id.* at *7–8. Here, by contrast, MAEC did not submit its objection pursuant to any lawfully established administrative procedures, and its objection is therefore not a formal request for agency reconsideration.

Because MAEC's administrative objection does not render the EAC grant termination non-final, MAEC's challenge to the grant termination is ripe. For the same reason, the grant termination is final agency action for purposes of Plaintiffs' APA claims.

## II.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims[2]

### A.    Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims

#### 1.    *Arbitrary and Capricious*

Defendants' termination of the EAC grant program was arbitrary and capricious for three independent reasons. First, as this Court held, Defendants' termination of one of the EAC grants was likely arbitrary and capricious because the "Termination Letter provides no reasoned explanation for the grant termination." *SEF*, 2025 WL 1453047, at *16–17. Defendants do not contest this Court's holding. Nor could they, as the same grant termination is at issue here.

Second, Defendants failed to explain their overbroad rejection of all alleged "diversity,

---

[2] Defendants argue that Plaintiffs are not likely to succeed on their claim of *ultra vires* agency action. Defs.' Opp. 18–19. Plaintiffs make no such claim. Plaintiffs alleged a separation of powers cause of action in their complaint, *see* Compl. ¶¶ 280–88, but Plaintiffs did not move for preliminary relief on that claim.

equity, and inclusion" work and their conclusion that the statutorily authorized EAC grants no longer effectuate agency priorities; indeed, they failed even to define what they considered to be "diversity, equity and inclusion" work. *See* Shaffer Decl. ¶ 13. Defendants likewise failed to consider any reliance interests before making that change. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016). Again, Defendants do not contest this.

Third, Defendants considered factors that Congress had not intended them to consider when terminating the EAC grants. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983). Defendants do not contest that they relied on factors outside of those authorized by Title VI and GEPA. *See* 42 U.S.C. § 2000d–1; 20 U.S.C. § 1234c(a). Moreover, the Department terminated the EAC grants based on its newly adopted priorities— opposition to whatever the Department believes is diversity, equity, and inclusion—but it did not adopt these priorities through notice-and-comment rulemaking, as required by federal law. 20 U.S.C. § 1232(d); 34 C.F.R. § 75.105(b)(2); 5 U.S.C. § 553(b), (c). Defendants claim that the "priorities" listed in the Termination Letter are not "priorities" of the agency within the meaning of the Department's regulations and that, in any event, the priorities are relevant to awarding grants, not terminating them. Defs.' Opp. 15–16. This argument is baseless. The Department uses "priority" as a term of art. *See, e.g.*, 34 C.F.R. § 75.105(b) (explaining how the Secretary establishes its annual priorities); *see also United States v. Alford*, 89 F.4th 943, 949 (D.C. Cir. 2024) (in statutory interpretation, if Congress "'employs a term of art,'" the Court presumes that Congress "adopts the cluster of ideas that were attached to" the term (quoting *FAA v. Cooper*, 566 U.S. 284, 292 (2012)). And the Termination Letter itself shows that the "priorities" are relevant to terminating grants; it states that the EAC grant "no longer effectuates[] Department priorities." Shaffer Decl. App. 1, at 14. Accordingly, by relying on unlawfully adopted priorities to terminate

the EAC grants, Defendants considered factors that they were not entitled to consider.

### 2. *Without Observance of Procedures Required by Law*

The Department failed to follow the required Title VI, GEPA, and OMB procedures when terminating the EAC grants. Defendants do not contest that the Title VI procedures for terminating federal funding apply to the Department's termination of the EAC grants, nor do they contest that the Department failed to follow those procedures. *See* 42 U.S.C. § 2000d–1; 34 C.F.R. §§ 100.7, 100.8(a); 34 C.F.R. pt. 100, App. A, pt. 1(18). Defendants also do not contest that the Department failed to follow even the OMB Guidance for terminating federal funding, which requires written notice and an opportunity to cure. *See* 2 C.F.R. §§ 200.208(d), 200.341(a). Either of these failures provides an independent basis for concluding that the Termination Letter must be set aside.

Defendants' only argument to the contrary is that the GEPA procedural requirements do not apply to grant terminations. *See* Defs.' Opp. 15–16. That is wrong. GEPA's procedural requirements apply when the Department seeks to withhold grant funds. 20 U.S.C. § 1234d; *see also* 34 C.F.R. § 270.6(a) (GEPA regulations apply to EAC grants). The termination of the EAC grants is a withholding of grant funds—the Department is keeping in its possession the grant funds that it previously obligated to MAEC and the other EAC grantees.[3] Defendants point to separate regulatory guidance that OMB promulgated almost two decades after GEPA was enacted, which refers to an agency's ability to terminate grants; Defendants contend that the reference to termination in the OMB Guidance must mean that Congress's reference to "withholding funds" in GEPA is something different than a grant termination. Defs.' Opp. 17; *see* 2 C.F.R. § 200.339(c). But the subsequent OMB Guidance—which is not specific to the Department and does not purport

---

[3] *See* Oxford English Dictionary, https://www.oed.com/search/dictionary/?scope=Entries&q=withhold (last visited May 21, 2025) (defining "withhold" as "to keep back; to keep in one's possession")*.*

to supplant the statutes and regulations governing the Department's use of federal funding—cannot change the plain meaning of the term "withhold" in GEPA, the Department's governing statute. *See* 20 U.S.C. § 1232(a)(1); *cf. Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (courts do not defer to agency interpretations of statutes).

Finally, Defendants do not contest that the Department failed to follow the required procedures—notice-and-comment rulemaking—when adopting new agency priorities and promulgating its new grant termination appeal procedures. *See* 20 U.S.C. § 1232(d). Both of those final agency actions must therefore also be set aside.

### 3. Contrary to Constitutional Rights and in Excess of Statutory Authority

The Department's termination of the EAC grants is also contrary to constitutional rights and in excess of the Department's statutory authority under Title VI and GEPA. Defendants do not contest these APA claims. For the reasons explained in Plaintiffs' opening brief, Plaintiffs are likely to succeed on these APA claims, and the EAC grant termination must therefore be set aside.

### B. Plaintiffs Are Likely to Succeed on the Merits of Their First Amendment Claims

On its face, the Termination Letter discriminates against disfavored viewpoints. It states that the Department's grants will not "support . . . *organizations*" that promote or take part in diversity, equity, and inclusion initiatives, even if those initiatives are wholly separate from the grant-funded activities. *See* Shaffer Decl. App. 1, at 14 (emphasis added). The Termination Letter imposes no such prohibitions on participating in initiatives that *oppose* diversity, equity, and inclusion. The Termination Letter thus "targets . . . particular views," a "blatant" violation of the First Amendment. *Rosenberger v. Rectors & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995).

Defendants do not dispute that the Termination Letter amounts to viewpoint discrimination, instead arguing that the Termination Letter is shielded from First Amendment scrutiny because it is a government spending decision. Defs.' Opp. 19–20. Not so. While the government can choose

which programs to fund, *see Rust v. Sullivan*, 500 U.S. 173, 193 (1991), it cannot "deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech," *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013) ("*AOSI*"). The government runs afoul of the First Amendment when it imposes "conditions that seek to leverage funding to regulate speech outside the contours of the program itself." *Id.* at 214–15; *accord FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 399–401 (1984). That is precisely what the Department did in the Termination Letter. By prohibiting organizations from promoting diversity, equity, and inclusion, rather than just imposing such a prohibition on grant-funded speech, the Termination Letter imposes "an unconstitutional burden on First Amendment rights." *AOSI*, 570 U.S. at 214 (citation omitted); *see S.F. A.I.D.S. Found. v. Trump*, No. 25-CV-01824-JST, 2025 WL 1621636, at *17–18 (N.D. Cal. June 9, 2025) (terminating grant funding in order to suppress "disfavored speech" likely violates the First Amendment); *cf. Rust*, 500 U.S. at 196 (challenged law distinguished between viewpoints expressed by federally funded grantees and those expressed through federally funded projects, and so did not impose unconstitutional conditions on grantees' protected speech). Plaintiffs are therefore likely to succeed on their viewpoint discrimination claim.

NAACP Plaintiffs are also likely to succeed on their right-to-receive claim, which Defendants do not challenge. NAACP educator members are denied access to desegregation and anti-discrimination trainings from the EACs because of the Department's termination of the EAC program. *See Kleindienst v. Mandel*, 408 U.S. 753, 762–63 (1972) ("It is now well established that the Constitution protects the right to receive information and ideas."); *see also Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (plurality opinion). NAACP Plaintiffs have identified willing speakers—the EACs—and willing listeners—their educator

members. *See Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976) ("[W]here a speaker exists, . . . the protection afforded [by the First Amendment] is to the communication, to its source and to its recipient[] both."); Holmes Decl. ¶¶ 17, 20, ECF No. 15-9. Defendants terminated the EAC grant program based on unconstitutional viewpoint discrimination, are preventing NAACP members from receiving information and ideas from the EACs, and are therefore infringing on NAACP members' right to receive information.

    C.   Plaintiffs Are Likely to Succeed on the Merits of Their Fifth Amendment Claims

        *1.  The Termination Letter Violated Plaintiffs' Due Process Rights.*

Defendants barely contest Plaintiffs' Fifth Amendment Due Process claim. They do not contest that the EAC grantees, including MAEC, were given no pre-deprivation notice and opportunity to be heard, as procedural due process almost always requires. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 52 (1993); *see also* 20 U.S.C. 1234–1234i; 34 C.F.R. §§ 81.1–81.20; 42 U.S.C. § 2000d–1; 34 C.F.R. § 100.8 (all prescribing procedures the Department must follow before terminating a grant). Defendants claim only that the Department provided a process to appeal the Termination Letter. Defs.' Opp. 18. But the Department's new and improperly adopted appeal procedures do not cure its failure to provide MAEC with procedural due process. The Department can change its process to appeal agency decisions only through notice-and-comment rulemaking. 20 U.S.C. § 1232(d). Defendants failed to satisfy that requirement; instead, the Department invented and imposed its purported appeal procedures without notice and comment. But even if the Department had followed the legally required process for adopting new appeal procedures, these still would not suffice to provide procedural due process under the Fifth Amendment. These new appeal procedures provide no opportunity to be heard, *see* Shaffer Decl. App. 1, at 16; Administrative Appeals Process for Department Grants, ECF No. 15-

12, in violation of "[t]he fundamental requirement of . . . the opportunity to be heard at a meaningful time and in a meaningful manner" before deprivation. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation mark omitted).

Accordingly, Plaintiffs are likely to succeed on their procedural due process claim.

### 2. *The Termination Letter is Void for Vagueness.*

The Termination Letter's list of possible bases for terminating the EAC grants is "so broad and vague as to be limitless; devoid of import, even." *SEF*, 2025 WL 1453047, at *17 (quoting *Am. Ass'n of Colls. for Tchr. Educ. v. McMahon*, No. 1:25-cv-00702-JRR, 2025 WL 833917, at *21 (D. Md. Mar. 17, 2025)). Laws regulating persons or entities, however, "must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("*Fox Television*"). "The government cannot simply tell people to 'be good' and leave it up to the enforcers to decide what 'good' is." *Tenn. Educ. Ass'n v. Reynolds*, 732 F. Supp. 3d 783, 808 (M.D. Tenn. 2024). But Defendants did not provide Plaintiffs with fair notice of the conduct and speech they prohibit. Instead, they state that the Department's priority is to not fund organizations that take part in "diversity, equity, and inclusion" initiatives—which they characterize as "[i]llegal"—but they fail to provide any definition of what these "illegal" diversity, equity, and inclusion initiatives might be. It is impossible for the EAC grantees to "know what is required of them," and the lack of "precision and guidance" enables the Defendants to enforce this priority "in an arbitrary or discriminatory way." *Fox Television*, 567 U.S. at 253.

Contrary to Defendants' unsupported suggestion, Defs.' Opp. 17–18, the vagueness doctrine is not limited to criminal statutes. *See Sessions v. Dimaya*, 584 U.S. 148, 183–84 (2018) (Gorsuch, J., concurring in part and concurring in the judgment) (vagueness does not depend on whether a law is labeled civil or criminal (citing *Giaccio v. Pennsylvania*, 382 U.S. 399, 402

(1966))). In *Fox Television*, for example, the Supreme Court recognized that administrative agency action is subject to a constitutional vagueness challenge. *See* 567 U.S. at 246–47, 254. "The degree of vagueness that the Constitution tolerates" depends on the consequences for noncompliance. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982); *accord Loc. 8027 v. Edelblut*, No. 21-CV-1077-PB, 2024 WL 2722254, at *7 (D.N.H. May 28, 2024), *appeal filed* No. 24-1690 (1st Cir. July 26, 2024). Indeed, "civil laws regularly impose penalties far more severe than those found in many criminal statutes," including, as here, stripping MAEC, the other EACs, and their employees of "their professional . . . livelihoods." *See Dimaya*, 584 U.S. at 184. The sanctions MAEC suffered are punitive and stigmatizing, *Tenn. Educ. Ass'n*, 732 F. Supp. 3d at 815 & n.19 (citing *Vill. of Hoffman Ests.*, 455 U.S. at 498), because the Termination Letter purports to make findings (albeit utterly unsupported) that MAEC's programs "unlawfully discriminate on the basis of race, color, religion, sex, national origin, or another protected characteristic; [and] that violate either the letter or purpose of Federal civil rights law," Shaffer Decl. App. 1, at 14. And where, as here, the challenged government action "threatens to inhibit the exercise of constitutionally protected rights" the government must be precise in delineating the prohibited conduct. *Vill. of Hoffman Ests.*, 455 U.S. at 498.

Accordingly, courts have enjoined non-criminal enactments forbidding the promotion of "DEI" because they are void for vagueness. *See, e.g.*, *NAACP v. U.S. Dep't of Educ.*, No. 25-CV-1120 (DLF), 2025 WL 1196212, at *1, *6 (D.D.C. Apr. 24, 2025) (certification requirement prohibiting educational institutions from engaging in "unlawful DEI programs" is unconstitutionally vague); *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, No. 25-CV-091 (LM), 2025 WL 1188160, at *18–19 (D.N.H. Apr. 24, 2025) (same); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 257, 283 (D. Md. 2025) ("*NADOHE*") (executive order

directing Attorney General "to encourage the private sector to end illegal discrimination and preferences, including DEI" likely unconstitutional), *opinion clarified*, No. 25-CV-0333-ABA, 2025 WL 750690 (D. Md. Mar. 10, 2025); *see also S.F. A.I.D.S. Found.*, 2025 WL 1621636, at *20–22 (holding the Executive Order directing the termination of "equity-related" grants likely unconstitutionally vague). Defendants provide no basis for departing from this authority.

The vagueness doctrine is also applicable to the notice of grant termination. The Termination Letter purports to "give . . . notice of conduct that is forbidden," *Fox Television*, 567 U.S. at 253: promoting or taking part in "diversity, equity, and inclusion . . . initiatives," Shaffer Decl. App. 1, at 14. Defendants then enforced their unconstitutionally vague "priorities"—without offering any explanation of what they mean by "DEI"—against MAEC and the other EAC grantees by terminating their grants. MAEC was punished based on the Department's unsupported conclusion that it had run afoul of the vaguely articulated strictures set forth in the Termination Letter. NAACP members are likewise harmed by the unconstitutionally vague Termination Letter; members are denied access to critical technical assistance because of the Department's enforcement of its "priorities" against the EAC grantees. *See NAACP*, 2025 WL 1196212, at *5–7 (holding that NAACP members were harmed by agency action regulating schools). Plaintiffs are therefore likely to prevail on their Fifth Amendment vagueness claim.

## III.    Plaintiffs Have Demonstrated Irreparable Harm

Plaintiffs have established that they face irreparable harm in the absence of a preliminary injunction. The termination of MAEC's EAC grant has caused existential economic harm: it forced MAEC to shut down its Center for Education Equity ("CEE"), through which it operated its EAC projects, and the loss of 41% its funding overnight has threatened MAEC's ability to continue operating at all. Williams Decl. ¶ 40, ECF No. 15-5; Rouland Decl. ¶¶ 36–37, ECF No. 15-4.

MAEC also faces concrete reputational harm from the Termination Letter because it accuses MAEC of discriminating on the basis of race and promoting "illegal diversity, equity, and inclusion" practices—a particularly injurious accusation given that the purpose of MAEC's work is to prevent and remedy segregation and discrimination. Shaffer Decl. ¶ 3; Williams Decl. ¶ 3. Defendants' elimination of the EAC Program—through the termination of all four EAC grants, including MAEC's—will also irreparably harm NAACP educator and student members by denying them access to services that address persistent discrimination and segregation, problems that Congress appropriated funds to address through the EAC program. *See* Holmes Decl. ¶ 20. And the Termination Letter burdens MAEC's and NAACP members' First and Fifth Amendment rights—constitutional injuries that are *per se* irreparable. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009).

This Court has already held that the termination of the Southern Education Foundation's EAC grant imposed irreparable harm because it threatened the EAC's future operations, employee livelihoods, and professional reputation. *See SEF*, 2025 WL 1453047, at *13–15. Defendants do not raise any new arguments that might change the Court's conclusion in *SEF*. Defendants fail to engage with, let alone rebut, Plaintiffs' arguments and evidence establishing irreparable harm.

First, Defendants contend that MAEC's economic losses are not irreparable because MAEC failed to show that these losses pose an existential threat to MAEC as a whole. Defs.' Opp. 11–12. But this Court has already found that the shutdown of a grant program constitutes irreparable harm when it creates an obstacle to the achievement of an organization's mission. *See SEF*, 2025 WL 1453047, at *14. MAEC's EAC program "relies on grant money, [so] harm is certain once the grant funds are withdrawn." *Id.* (quoting *Climate United Fund*, 2025 WL 1131417, at *17). As with the Southern Education Foundation, the grant termination forced MAEC to cancel

all current and planned CEE projects and left it unable to provide EAC services to school districts seeking desegregation assistance. Williams Decl. ¶ 40; Rouland Dec. ¶ 7, 13–27. MAEC has operated an EAC for over thirty years—its EAC is "the heart and soul of the organization" and is central to achieving its mission of advancing educational equity. Shaffer Decl. ¶¶ 2–3, 5–8. The shutdown of its EAC program thus "unquestionably make[s] it more difficult for [MAEC] to accomplish [its] primary mission," and therefore constitutes irreparable harm. *See SEF*, 2025 WL 1453047, at *14 (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016)).

Moreover, even if the elimination of all CEE projects was not sufficient to establish irreparable harm, Plaintiffs *did* offer evidence that the Termination Letter poses an existential threat to MAEC as a whole. The EAC grant comprised 41% of MAEC's budget, and the termination forced MAEC to lay off several highly skilled staff members with over 90 years of combined experience in educational equity services, reduce the capacity of the remaining staff to 80%, and cease providing office space and necessary office supplies to its employees. Rouland Decl. ¶¶ 41–45. Staff members who remain with MAEC continue to work part-time on non-EAC projects, but the sudden loss of nearly half its revenue has destabilized the organization and left its leadership uncertain as to whether and how long it can continue to operate without access to its expected EAC funds. Williams Decl. ¶ 41; Rouland Decl. ¶¶ 41, 47; Shaffer Decl. ¶ 21.

Second, Defendants claim that MAEC's asserted reputational harms are illogical and speculative. Defs.' Opp. 12. Defendants' assertion that reputational harm cannot "logically follow" from a false accusation itself defies logic. Plaintiffs' belief that the Termination Letter wrongly accuses MAEC of racial discrimination does nothing to prevent the damage to MAEC's reputation that the Department's mischaracterization of MAEC's work causes. *See SEF*, 2025 WL 1453047,

at *15. The false claim that MAEC is engaging in discrimination impairs MAEC's ability to be hired by school districts that serve diverse populations. Further, MAEC's allegations of reputational harm are not speculative, as MAEC has already faced increased difficulty pursuing its non-EAC work due to the termination. Rouland Decl. ¶¶ 28, 35.

Third, Defendants contend that MAEC faces no First Amendment injury because MAEC's speech has not been "inhibited" by the grant termination. Defs.' Opp. 13. This argument ignores MAEC's allegations. As explained above, the Termination Letter imposes a viewpoint-based restriction because it announces a priority against providing grant funds to organizations that promote (but not those that oppose) what the Department deems "diversity, equity, and inclusion," regardless of whether the grants actually fund "diversity, equity, and inclusion" initiatives. *See supra* § II.B. The Termination Letter thereby "leverage[s] funding to regulate speech outside the contours of the program itself." *AOSI*, 570 U.S. at 214–15. Unsurprisingly, since receiving the Termination Letter, MAEC has been forced to modify its speech in its non-EAC programs to avoid additional grant terminations. Rouland Decl. ¶¶ 30–35 (explaining that MAEC cancelled a public event commemorating the Civil Rights Act and removed language from its presentations, websites, and trainings that "might be construed as advocating what has been labeled 'diversity, equity, or inclusion'"). The Termination Letter thus imposes a *per se* irreparable constitutional injury.

Fourth, Defendants assert that the harm to NAACP members is too attenuated from the termination of MAEC's grant to support a finding of irreparable harm. Defs.' Opp. 13. This argument misunderstands the nature of the NAACP Plaintiffs' claims. NAACP Plaintiffs do not merely challenge the termination of MAEC's EAC grant, but rather the cancellation of the EAC Program as a whole—that is, the Department's simultaneous cancellation of all four EAC grants. NAACP members throughout the country are harmed by the denial of desegregation assistance

services caused by the Department's nationwide termination of the EAC Program. Lewis Decl. ¶¶ 5–14, ECF No. 15-8; *see also* Mundry Decl. ¶¶ 7–18, Pls. Ex. 1 (describing some of the projects of the Western Educational Equity Assistance Center that were shut down because of the grant termination); Skelton Decl. ¶¶ 6–12, Pls. Ex. 2 (describing some of the projects of the Midwest and Plains Equity Assistance Center that were shut down because of the grant termination); Leconte Decl, ¶¶ 9–11, Pls. Ex. 3 (describing the harm to a NAACP member's child from the loss of EAC services). Defendants also point out that harm to third parties cannot establish irreparable harm. Defs.' Opp. 13. But the harm to NAACP members is *not* third-party harm as the NAACP Plaintiffs are parties bringing the lawsuit on behalf of their members. "[T]he NAACP has standing to assert the rights of its members." *NAACP v. Button*, 371 U.S. 415, 462 (1963); *accord Warth v. Seldin*, 422 U.S. 490, 511 (1975) ("Even in the absence of injury to itself, an association may have standing solely as the representative of its members.").

Finally, Defendants assert that the harms identified above are not irreparable because of the "uncertainty" created by MAEC's administrative objection, and because of the amount of time it took MAEC to request relief from this Court. Defs.' Opp. 11, 13–14. These arguments are unavailing. Defendants attempt to characterize the Termination Letter as a tentative decision, but as explained above, the Termination Letter has already caused—and continues to cause—irremediable harm. As to the timing of Plaintiffs' filing, Plaintiffs filed this action promptly—less than a month after the plaintiffs in *SEF* sought preliminary relief. In any event, the time elapsed in seeking relief, "on its own, is [not] a permissible basis for denying a preliminary injunction." *Gordon v. Holder*, 632 F.3d 722, 724–25 (D.C. Cir. 2011) (citation omitted).[4] Here, the

---

[4] The case Defendants rely on in arguing to the contrary is wholly inapposite. *See* Defs.' Opp. 14 (citing *Open Top Sightseeing USA v. Mr. Sightseeing, LLC*, 48 F. Supp. 3d 87, 90–91 (D.D.C. 2014)). There, the plaintiffs sought both a preliminary injunction and also sought to delay the

Department's sudden termination of MAEC's grant significantly disrupted MAEC's operations and required the organization to update its clients, reorganize its staff, undertake financial planning, and seek new clients and funding to stay afloat. Rouland Decl. ¶¶ 36–38. Any delay was reasonable under the circumstances and does not undermine the irreparable nature of Plaintiffs' harms.

## IV.    The Balance of Equities Favors Plaintiffs

Defendants fail to establish that the balance of equities favors them. They contend that they have a compelling interest in eliminating racial discrimination, Defs.' Opp. 21, but provide no evidence or argument to suggest that the termination of the EAC program—which was designed to remedy segregation and discrimination—will in any way advance Defendants' purported interest. *See SEF*, 2025 WL 1453047, at *13 ("The Department's decision to terminate the EAC grant contravenes . . . *Brown*[ *v. Board of Education*'s] constitutional promise."). Defendants further argue that they will be harmed by a preliminary injunction because they risk potentially unrecoverable financial loss, Defs.' Opp. 21–22, but they provide no evidence that MAEC or the other EAC grantees would be "unable to pay back grant monies," *SEF*, 2025 WL 1453047, at *17.

Finally, Defendants argue that an injunction will disrupt the status quo because "[h]ere the status quo is that the grant has been terminated." Defs.' Opp. 22. This argument misunderstands "status quo." "The status quo is the last *uncontested* status which preceded the pending controversy[,] . . . the regime in place before the [challenged action]." *Huisha-Huisha v. Mayorkas*, 27 F.4th 718, 733 (D.C. Cir. 2022) (cleaned up). The purpose of an injunction is therefore to "preserve the relative positions of the parties" as they were *before* the challenged action. *A.A.R.P.*

---

proceedings. The plaintiffs' affirmative requests to delay the proceedings contradicted their claim of irreparable harm. *Open Top Sightseeing*, 48 F. Supp. 3d at 90. Here, by contrast, Plaintiffs have caused no such delays.

*v. Trump*, 145 S. Ct. 1364, 1368 (2025). An injunction here would preserve the pre-grant termination position of the parties.

Because Plaintiffs are likely to succeed on their Constitutional and APA claims, the balance of equities is in their favor. *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[E]nforcement of an unconstitutional law is always contrary to the public interest."); *NAACP*, 2025 WL 1196212, at *7 ("[A] likely meritorious Fifth Amendment claim . . . tips the balance of equities in [Plaintiffs'] favor."); *Newby*, 838 F.3d at 12 (no public interest "in the perpetuation of unlawful agency action," and "a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations" (internal quotation marks omitted)).

## V.    The Court Should Not Require Plaintiffs to Post Security

Courts have "broad discretion" to determine "the appropriate amount of an injunction bond," *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), "including the discretion to require no bond at all," *Nat'l Council of Nonprofits v. OMB*, No. 25-cv-239 (LLA), 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) ("*NCN*") (internal quotation marks omitted), *appeal filed* No. 25-5148 (D.C. Cir. Apr. 25, 2025). A bond "is not necessary where requiring [one] would have the effect of denying the plaintiffs their right to judicial review of administrative action." *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971) ("*NRDC*") (collecting cases); *see also NADOHE*, 767 F. Supp. 3d at 291 (setting bond of zero dollars because granting the Government's request "would essentially forestall [the] [p]laintiffs' access to judicial review"); *NCN*, 2025 WL 597959, at *19 (no bond); *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (same). It would "be a mistake to treat a revenue loss to the Government the same as pecuniary damage to a private party." *NRDC*, 337 F. Supp. at 169.

Plaintiffs, non-profit organizations, seek to vindicate important constitutional and statutory rights that serve the public interest. *See P.J.E.S.*, 502 F. Supp. 3d at 520 (imposing no bond where

the plaintiff sought to "vindicate important rights under the immigration laws"). If the Court finds, as it did in *SEF*, that the preliminary injunction factors weigh in Plaintiffs' favor, then, as in *SEF*, "requiring a significant bond would conflict with both the Court's findings that each of the preliminary injunction factors weigh heavily in [Plaintiffs'] favor and the principles of the right to seek judicial review of unlawful government action." *SEF*, 2025 WL 1453047, at *18 (internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 25-cv-0946 (CKK), 2025 WL 1187730, at *62 (D.D.C. Apr. 24, 2025) (collecting recent cases denying government's request to post bond).

## VI. The Court Should Order Defendants to Extend the Term of the EAC Continuation Grants to Make Plaintiffs Whole.

The Court has equitable authority to award Plaintiffs "complete relief" and return them to the status quo before the unlawful termination of the EAC grants. *Porter v. Warner Holding Co.*, 328 U.S. 395, 399 (1946). At that time, MAEC had multiple projects underway, *see* Shaffer Decl. App. 1, at 11–12, with 230 days left in the budget period. To afford complete relief, the term of the EAC continuation grant must be extended (a) to account for the 230 days remaining for the grant as of the date it was unlawfully terminated; and (b) to account for the time now needed to re-start the EAC project. MAEC will require approximately 90 days to restart its EAC projects: it must re-staff the CEE, re-establish contact with the school districts where it had ongoing projects, and determine how to pick up and resume those projects given their sudden interruption and possible changes in priorities or capacity at the school districts. Rouland Supp. Decl. ¶¶ 3–9, Pls. Ex. 4; *see also* Mundry Decl. ¶ 20 (describing similar timeframe for the Western EAC). Accordingly, Plaintiffs respectfully request that the Court direct Defendants to extend the term for the EAC continuation grant for the 320 days (the 230 days left in the grant year plus the 90 days required for restarting) following issuance of the Court's Order reinstating the grant.

24

The requested relief is within the scope of Plaintiffs' Proposed Order. The Proposed Order asks that the Termination Letters be vacated and set aside. For this remedy to have effect, Plaintiffs must be restored to the position they were in before the unlawful termination.

This relief is also consistent with the regulations governing the Department's grants. The Secretary "*usually* approves a budget period of not more than 12 months," 34 C.F.R. § 75.251(a) (emphasis added), but is not required to do so. Indeed, the Department's regulations expressly permit grantees to spend funds appropriated for one budget period in a subsequent period, *id.* § 75.253(e), so the last day of the budget period listed in a grantee's award notification is not necessarily the last day that the grantee can spend its funding. And OMB guidance permits agencies to revise the grant budget period. *See, e.g.*, 2 C.F.R. §§ 200.308(f)(10), (g)(2), 200.309. Nothing in the Department's regulations prohibits extending the budget period for the EAC grant to account for the time lost to Defendants' unlawful termination.[5]

Flexibility—and the ability of courts to "accord all the relief necessary to correct particular injustices"—is a hallmark of equity jurisdiction. *Holland v. Florida*, 560 U.S. 631, 650 (2010) (cleaned up). Plaintiffs therefore respectfully request that the Court exercise its discretion to afford Plaintiffs complete relief.

## CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' opening Memorandum, Plaintiffs respectfully request that this Court issue a preliminary injunction against Defendants consistent with that requested in the Proposed Order.

---

[5] The Department has extended grant budget periods before. In *Board of Education of the City of Chicago v. Devos*, the Department extended the budget period for a grant to the Chicago Public Schools to give the district time to come into compliance with the grant requirements. Defs.' Resp. to Pls.' Mot. for Prelim. Inj. & Mem. Supp. Mot. to Dismiss 9–10, No. 18-CV-7914 (N.D. Ill. Mar. 14, 2019), ECF No. 33.

Dated: June 16, 2025                    Respectfully submitted,


                                        */s/Joseph Wong*
                                        Joseph Wong
                                        DC Bar No. 1017589
                                        NAACP Legal Defense and
                                        Educational Fund, Inc.
                                        700 14th Street NW, Suite 600
                                        Washington, DC 20005
                                        Phone: (202) 682-1300
                                        Fax: (202) 682-1312
                                        jwong@naacpldf.org


                                        Katrina Feldkamp*
                                        Tiffani Burgess
                                        DDC Bar No. NY0632
                                        Maia Cole*
                                        Victor Genecin*
                                        NAACP Legal Defense and
                                        Educational Fund, Inc.
                                        40 Rector Street, 5th Floor
                                        New York, NY 10006
                                        Phone: (212) 965-2200
                                        Fax: (212) 226-7592
                                        kfeldkamp@naacpldf.org
                                        tburgess@naacpldf.org
                                        mcole@naacpldf.org
                                        vgenecin@naacpldf.org

                                        * Admitted *pro hac vice*

                                        *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on June 16, 2025, the foregoing notice was filed electronically and will be sent electronically to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

*/s/Joseph Wong*
Joseph Wong
DC Bar No. 1017589